We'll hear from Mr. Martinez, counsel, first. Thank you, Judge Southwick, and may it please the Court. I'm Evan Howes, and I'm here on behalf of Busey Martinez. Your Honors, there is no dispute that everything that followed the initial K-9 alert in this stop. The question is whether the initial alert created the reasonable suspicion or probable cause needed to justify that expansion. The reason the correct answer is no is relatively simple in our view. The government's evidence established that K-9 Bach is trained to alert to a non-contraband odor that is or is not attributable to criminal activity depending on the circumstances and additional context. So the consequence of that ambiguity is that the dog's alert to the passenger area of a vehicle is not on its own sufficiently reliable as an indicator of the likely presence of contraband or evidence of a crime. And that conclusion is well-grounded in case law. Every Supreme Court case on the subject makes clear that the sui generis nature of a well-trained drug dog's alert is premised on its capacity to respond only to the smell of contraband. But the record, and this is the most important point of the case, in this case proves the point. Indeed, the government's own expert testified that as a result of the initial alert's inherent ambiguity, the agents here had to employ a two-step secondary sniff procedure, basically sniff, remove any known occupant, second sniff. Only after removing Mr. Martinez could the agents reasonably presume that any further alert was a response to an odor that was likely attributable to criminal activity. And There are two things that you have argued, or at least that the facts support, and I don't want to get ahead of what you actually have argued. One is what you're saying now, that the reasonable suspicion that perhaps or was perhaps not is a problem. There is no evidence, is there, that the dog alert, what it does when it's alerting, is different if it's scenting hidden people as opposed to drugs? Correct. Does that make a difference, since either would be sufficient for a search? Does it matter that there's no different alert, and so once the dog alerts, it's one or the other, both of which would justify a search of the vehicle? It does matter, Judge Southwick, but the reason I have to dispute the premise of the question in the sense that it is not the case, and the evidence in the record bears this out, that the dog's alert is limited to only the presence of contraband, drugs, or the presence of human scent insofar as that scent is an indicator of illegal activity, right? Because the agent, the expert agent, the expert who's trained these dogs for over 30 years and who testified in this case made absolutely clear that these dogs, as trained, will alert to the odor of concealed human scent, but concealed human scent means any scent of a human that's emanating from an area the dog can't see. So you've got to remember, it's very important in all of these cases, and the language gets mixed up, dogs are never alerting to people, or they're not taught to alert to people, they're taught to alert to odor, and that odor is human scent. Now, we do have, based on this record, and we're prepared to explain. I must say, I didn't quite follow the distinction you're making. It seems to me that the problem, the issue is, was that scent in a location where people would be hidden as opposed to the driver? Is that one of your factual arguments, that you had to get the driver out before there was confirmation that the dog was alerting to some human scent that was still in the vehicle after Mr. Martinez got out? Correct, and that demonstrates that the initial alert in and of itself is ambiguous as to whether or not that alert is to the scent of a lawful passenger, a lawful citizen who is in a passenger compartment of a vehicle as opposed to an undocumented individual who is attempting to conceal or hide themself in order to avoid inspection. In fact, the agent admitted on the record in this very case that the dog will alert to things like a baby in the backseat in a car seat, or an individual who's sleeping under a blanket in the backseat as well. I understand what you're getting at, Judge Southwick, and I understand that this is a hard and nuanced distinction. What I think . . . Before you leave distinction, I guess I'm a bit lost on why you talked about that, which I guess was part of the examination of babies being hidden or whatever else. I'm sure the dog . . . nobody's representing that the dog can also tell whether a person is legally in this country or not, so it's only sending to the presence of people, and so whether it's a baby or someone who's entered illegally still works to me insofar does it not as a reasonable suspicions concern, so long as it's someone who is not Mr. Martinez that the dog is alerting to. Oh, but that's not necessarily true, Judge Southwick. It isn't the case that it's not . . . Well, no, I know that's your factual argument, but I just want to make sure it doesn't really matter if it's a baby or somebody else, so long as it's a hidden person that the dog is alerting to that's not the driver. Well, that's what I'm saying, Judge Southwick, is we can't tell from the alert alone that it's not responding to the driver, and the testimony makes clear. I rarely do this, but I brought a page of the record up so that way I could say, and this goes to our point that the evidence here actually establishes that the dog alert in and of itself wasn't a reliable indicator of crime, and that more information was necessary in order to move beyond the just hunch aspect of the situation, or at least enough to make it objectively reasonable. So here it is. This is the direct examination from the prosecutor, and it's on page 684 of the record on appeal. And the question posed to Agent Devaney is, what is the purpose of the secondary sniff? And he says, the secondary . . . he says what it is, and then so after the first paragraph he says, so what we do in the secondary sniff is once the vehicle is removed, we remove all visible occupants from the vehicle and conduct another sniff. An alert under those circumstances establishes and verifies that the primary alert was not triggered by the vehicle occupants. So that is the purpose of the secondary sniff. So it's not . . . that secondary sniff is designed to exclude the possibility that the dog has responded to any of the occupants that were in the vehicle. And the dog, remember, is a foot and a half from the ground. And so we can get mixed up a lot as to whether or not somebody is visible or not visible as to an agent. But as to the dog, it really does matter. And so the overall principle here is that, and it's one that I think this is the fundamental error of the district court's analysis at the stage of the initial sniff, is that the district court's finding that the dog was well-trained as dispositive of its reliability. But that isn't the case when you're dealing with a dog that, as the testimony establishes here, will alert to an odor that could or could not be unlawful in the circumstances. And Judge Southlake, if I could give an example, I think the closest example I've been able to think of, of a hypothetical situation, is imagine that a dog was trained to alert to the normal controlled substances, normal illegal substances. But it's also trained to alert to a substance in Schedule 4 or Schedule 3, like Xanax, Alprazolam, the substances that are lawfully prescribable but are also part of an unlawful, that can be trafficked in certain instances. That dog's alert, in and of itself, without knowledge of the surrounding context, isn't enough to say, yes, it's likely that I'm going to find, or at least that the dog has responded to the odor of, one of the illegal substances or even one of the prescribed substances that's being possessed unlawfully. And so that's the thrust of the point. And that's, I mean, every single Supreme Court case on the topic, from United States versus Place, Illinois versus Caballes, Florida versus Harris, has reaffirmed that the reason a drug dog's alert is able to, is a fact that creates probable cause and, of course, reasonable suspicion at the same time, is the fact that it is trained to respond only to odors that we know are unlawful when they are present. And a human scent is never contraband. And the only time it is or is not indicative of unlawful activity is based on the context. And so I think one of the things that I wanted to give the Court to make clear is we're not using, we don't think this is a silver bullet that's going to knock dogs off of the Border Patrol checkpoints, right? Like, the dog's alert in this case was not irrelevant to the totality of the circumstances, and Border Patrol will still be able to, if you were to rule in Mr. Martinez's favor and recognize this nuance, the Border Patrol will still be able to use this dog's. The only difference is they have to rely on the context. The sniff, the initial sniff itself, when it's to a passenger compartment, isn't enough to resolve the ambiguity as to whether the dog is actually responding to the driver or a lawful passenger or somebody that's hidden. But of course, context will often resolve that ambiguity on its own. What about the location? If a dog alerts, as it did in the Tayo case, to the very back of a tractor trailer, right, if that's where it's focusing all its energy, not to a passenger compartment, but to a place where no lawfully, lawful person would ever reasonably be hiding, that in and of itself, the alert would allow the further intrusion. Same with a motorcycle. In that situation, we can be sure that the dog is, if it's alerting, following its training, it's ignoring the person that's right there and obvious. So it's probably responding to contraband somewhere in the motorcycle. And same thing with the trunk of a car. If it goes directly to the trunk and is only at the trunk, there's no reasonable basis to think that a person will lawfully be in the trunk. And so that's different. Does that argument mean that in a tractor trailer rig, if there are people who should not be there hiding in the tractor place where the driver would sleep and otherwise, there's never going to be a legitimate search? Not if that is a place people could be. Not who have been identified by the driver, not who have awakened and shown themselves during their stop. Tell me your response to that. My response to that is that the alert to a sleeper compartment, just like an alert here, is relevant and even highly relevant to the totality of the circumstances. It just can't be the only circumstance like it was here. And so what can an agent do if a dog acts exactly like this dog? Well, they could do the actual immigration inquiry that the programmatic purpose justifies. They could ask a couple questions. They could also say, hey, Mr. Martinez, surely you've noticed that my dog is paying a lot of attention to your sleeper cab. What do you have to say about that? Is there anybody back there? And then the driver's response and the myriad of different behavioral indicators of suspicious activity that this court and others routinely recognize combined with the dog's alert will surely be enough, right? But what we're saying is that the alert by itself is not just something that you move and go straight past go and directly to secondary and directly to upgrading the intrusion by removing Mr. Martinez from the car. That is the difference. The thing is that this isn't a case where the stop was just prolonged. The degree of its intensity was ratcheted up because they took an individual outside of the car. And remember, in the Supreme Court cases, it's always the fact that a dog's alert is only likely to reveal, no, isn't likely to reveal any private information. But the procedure, the two-step double-sniff procedure that the agent testified is necessary to get reasonable suspicion, to reasonably believe the dog's alerting to crime, does in fact require a human to get out of the car and potentially reveal personal information. And that's, for those and other reasons we have in our brief, is why we think that you should reverse the district court suppression ruling in this case. Thank you, counsel. Thank you, sir. Christian Adamson for the United States, and may it please the Court. It was undisputed in this case that the canine duck buck alerted to Mr. Martinez's vehicle before the immigration inspection was completed. In fact, the videographic evidence shows that buck alerted 20 seconds into his stop at primary inspection before Mr. Martinez had even completed rolling down his window to talk to the primary inspection agent. This court has long held that a dog's alert to a vehicle provides probable cause to search for contraband, either drugs or concealed humans. The canine expert in this case testified to that effect. They understood that once the dog alerted, they had probable cause to search. And then Mr. Martinez was referred to secondary for the search to occur. I just want to explain why, for instance, Mr. Martinez was removed from the vehicle. The Border Patrol agent testified that they don't always like to indicate to the driver that the dog has alerted because it puts the dog and the agents in a security jeopardy because the driver still has control over the vehicle. They can pull away quickly. They could throw the vehicle towards the dog or the agent, and so the person is first removed from the vehicle, and that increases the safety of those involved. Counsel, you're denying that the alert later was confirmatory? So the purpose of the second snip and alert was a matter, one, of due diligence to ensure that the alert wasn't caused by the person, but not to indicate that they didn't believe that the alert while the person was in the car could provide probable cause. Agent Devenney testified that the dogs are trained specifically to ignore the visible individuals who are in the car and only alert when there's someone hidden in the car. The purpose of the second sniff also helps Border Patrol figure out how they intend to conduct the search, to locate where they should start searching, perhaps if the dog doesn't alert a second time, the extensiveness of the search. However, Border Patrol testified that once the dog alerts, even if the dog alerts are pre-primary, they have a right to search in order to figure out what caused the alert, what contraband could be in the vehicle. Are most dogs at checkpoints like this trained to alert to the illegal presence of either people or drugs? I'm just trying to recall a case in which this has been a factual question. Usually it's drugs being found through the drug sniff in the cases that I've looked at. Is this a new experience, an unusual combination? It seems like it should be. I think Border Patrol would want to know, but I'm just wondering if this issue is new. So in United States v. Ventura, this court noted that the fact that a dog could be trained to sniff for both drugs or concealed people didn't offend Martinez-Fuerte. So I believe that that was presented in that case where the dog was trained to do both because, and in Ventura, the Border Patrol agent indicated that they were searching for concealed persons, but in this case there was already an alert before he even got to pre-primary. So there was no delay without reasonable suspicion because the reasonable suspicion materialized when Bach alerted in pre-primary and then again at primary before the purpose of the stop had even been completed. Is it your position everything that was done in this case could have been done without the second alert by the dog? The search could have occurred without the second sniff of the dog, although I believe once the vehicle is pulled over to the secondary, the dog is involved in the search process because the dog can be used to help pinpoint exactly where they should be searching, Border Patrol should be searching, even though they believe that the initial alert provides reasonable suspicion, or I mean probably cause to search the vehicle to find if there's contraband in there. The district court's finding that Bach was reliable was well supported by the record. The district court was provided with Bach's maintenance trainings for the entire year leading up to the alert in this case. The canine expert testified that if he had any issues with false alerts, that would be reflected in his maintenance records. There was no such indication in the maintenance records and Bach's performance in maintenance training was above average or average, which is what the district court ultimately found. So with an alert, Border Patrol had probable cause to search the vehicle, Bach was reliable, and the district court correctly found that there was PC to search. You got anything else for us? No, unless the court has any questions, I just ask the judgment be affirmed. All right, counsel. Thank you. I just have a couple of brief points of rebuttal, Your Honors. First, I just have to correct the record here. The expert, the government expert agent Devaney did not at any point in this record testify that he believed there was probable cause from the initial alert. The government's, again, the only point, or that the secondary SNF wasn't necessary. The only point where secondary SNF and that two-step process was actually described in the record or on the two pages that I have before me right now. The first one, I already read the quote to you. The second is, remember, we supplemented, this was a unique case because on the same day over the same two days, the same lawyer in our office was making this a similar challenge in two different district courts at the same time, and so, he was cross-examining and directing the same agents in two different courtrooms throughout the day. And so, what he did whenever we did post-hearing briefing in this case was, without objection, supplement the record with part of the agent's testimony from the other hearing. And so, that's Defendant's Exhibit 1 to his supplemental brief after the suppression hearing. And so, I'm going to read again from page, this is page 151 of the record on this appeal. And so, before that, we, leading up to this colloquy, we have the testimony about your, so the car has, for instance, a baby in it, in a carrier. He might alert to that because there's a baby in the car seat. Yes, sir. Same thing with person under the blanket. And so, our lawyer says, but your dog will alert to those things because he can't see them, anything. And the agent responds, yes, that's why we do the secondary sniff. And then, a little bit down the page, our lawyer is getting a little testy with the agent, which is regrettable. And then, the agent responds, well, first of all, the car wouldn't be searched until the secondary sniff is conducted with all visible occupants outside the vehicle. And then, another alert occurred. Because our lawyer is like, so what you're saying is basically, anytime this dog alerts, even if it is to a lawful citizen, they're going to have to get out of their car and you're going to search their car. And then, only then, will we be able to say if the dog was actually alerting to lawful or non-lawful present. And then, the agent's comeback to that was that the car wouldn't be searched until the secondary sniff. And that means that the agent understands that probable cause doesn't exist until they've removed the potential lawful scent from the vehicle. And that includes any known occupants. And so, again, the agents have many bows in their quiver to try and get reasonable suspicion with other behavioral observations in addition to a dog's alert at primary. But when you train your dogs to alert to things that are not controlled substances, you are opening yourself up to the requirement that you will have to gather or rely on additional information in order to get to the bar that the Fourth Amendment sets. Remember, we're in the context of a suspicionless search in the first place. Excuse me, a suspicionless detention in the first place. And these are supposed to be very narrow. And we've already allowed to expand them by allowing trained dogs to sniff the vehicles while they're in that process. But when that dog is trained to alert to things that an agent of the United States of America says could absolutely be to the odor of a lawfully present person and not an unlawful odor, that means that they have to do a little more work and that they just have to make some more observations, including things like asking for consent, which is something that happens routinely in these cases. And I do just want to emphasize that there is no case that I am aware of that has ever confronted testimony like this and has ever said that a dog whose alert is ambiguous as to whether or not it's responding to unlawful activity is one that is still nevertheless arouses reasonable suspicion on its own, let alone probable cause. There are decisions in states that have been grappling with this after the legalization of marijuana have recognized that a dog's alert whenever it is trained to respond to marijuana isn't on its own enough to create reasonable suspicion or probable cause unless you have good reason to think. Like, let's say there's a reliable tip that this person is trafficking drugs and you see something consistent with that tip. All of a sudden, the dog's alert does become probable cause because it's excluded the lawful purpose. And so that's what we're saying here, and we do think that that is an important distinction that this court should not overlook, and we appreciate the court's time and ask you to reverse. Thank you. All right, counsels, thank you both for your presentations this morning. We'll take the case under advisement.